UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL MOODY,<br><br>      Petitioner,<br> v.<br><br>JAMES OBENLAND,<br><br>      Respondent. | Case No. 3:20-cv-05984-TL-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for February 18, 2022 |

This matter comes before the Court on petitioner's petition for writ of *habeas corpus* under 28 U.S.C. § 2254 challenging the legality of his conviction for the crimes of child molestation in the second degree; commercial sex abuse of a minor; and felony communicating with a minor for immoral purposes. Dkt. 1, Dkt. 8-1, Judgment and Sentence in Pierce County Superior Court Case No. 17-1-02109-3 at 28-41; Dkt. 8-1, Motion and Order Correcting Judgment and Sentence in Pierce County Superior Court Case No. 17-1-02109-3, at 48-53. The Court should DISMISS the habeas petition and DENY issuance of the certificate of appealability (COA).

On November 15, 2017, the Honorable Stephanie Arend sentenced petitioner to 108 months of total confinement. Dkt. 8-1 at 28-41. Additionally, the Court imposed a 36-month term of community custody for each count following release from confinement. Dkt. 8-1, Findings of Fact and Conclusions of Law for Exceptional Sentence, at 43-46. The Court specified that the 36-month terms of community custody

REPORT AND RECOMMENDATION - 1

would run consecutively for Counts I and II, but concurrently with the other counts, for a total of 72 months. *Id.*

On January 4, 2018, the Court issued an Order Correcting the Judgment and Sentence. Dkt. 8-1 at 48-53. The Court corrected an error in calculating the fee imposed. Dkt. 8-1 at 48-49. Additionally, the Court corrected the term of community custody imposed. Dkt. 8-1 at 50-53. The Court explained that the term of community custody for these counts was ordinarily 36 months for each count, but the combined incarceration and community custody terms could not exceed the statutory maximum sentence for any count. *Id.* The term of community custody originally imposed would exceed the statutory maximum punishment for the offenses. Dkt. 8-1 at 50-53; Dkt. 8-1, Corrected Findings of Fact and Conclusions of Law for Exceptional Sentence, at 55-58. Accordingly, the Court reduced petitioner's term of community custody to 12 months on Count I, Count II and Count IV and 0 months for Count III. *Id.*

Petitioner presents two grounds for relief: (1) Petitioner's guilty plea violated due process and (2) Petitioner was denied his constitutional right to notice. Dkt. 1, Petition for Writ of Habeas Corpus. Petitioner does not request an evidentiary hearing. *Id.*

The facts of petitioner's criminal case are summarized by the Washington State Court of Appeals, Dkt. 8-1, In the Matter of the Personal Restraint Petition of Daniel Scott Moody Jr., No. 52700-6-II, at 202-210. That opinion is attached to this Report and Recommendation, in the interest of brevity, the facts will not be re-stated here.

DISCUSSION

A.  EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is discretionary. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 563 U.S. 170, 181 (2011).

Petitioner has not requested an evidentiary hearing. The petition relies on the underlying state court record arguing that the state court decision unreasonably applied clearly established federal law. The Court should find that an evidentiary hearing in this action is unwarranted.

B.  EXHAUSTION OF STATE COURT REMEDIES

The exhaustion of state court remedies is a prerequisite to granting a petition for writ of *habeas corpus.* 28 U.S.C. § 2254(b)(1). If the State decides to waive the exhaustion requirement, the waiver may not be implied or inferred; it must be explicitly waived by respondent. 28 U.S.C. § 2254(b)(3). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to

1  consider all claims before presenting them to the federal court. *Picard v. Connor*, 404
2  U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985).

   Respondent has conceded that petitioner's claims are exhausted. Dkt. 7 at 10.

   C.   SUBSTANTIVE CLAIMS

   **Standard of Review**

   Under the Antiterrorism and Effective Death Penalty Act (AEDPA), the federal court reviews the last reasoned state court decision. *Murray v. Schriro,* 745 F.3d 984, 996 (9th Cir. 2014). In this case, the last reasoned state court opinion is the Washington State Supreme Court's Ruling Denying Review in In the Matter of the Personal Restraint Petition of Daniel Scott Moody JR., No. 98105-1, at 264-266 (a copy of this Washington State Supreme Court opinion is attached to this Report and Recommendation).

   The federal court defers to the state court's decision for claims that were adjudicated on the merits, except, the federal court does not defer if the state court made a decision "contrary to, or involved an unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *Harrington v. Richter,* 562 U.S. 86, 97-98 (2011). Any claims that are federally reviewable and were not adjudicated on the merits by the state court, are reviewed de novo in federal court. *Rodney v. Filson,* 916 F.3d 1254, 1258 (9th Cir. 2019).

   On habeas corpus review, the federal court presumes that the state court adjudicated the claim on the merits when "the relevant state court decision . . . fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal law]," unless the

state court's ruling shows (or state law procedural rules would apply and preclude a decision on the merits) the merits were not reached. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (quoting *Coleman v. Thompson*, 501 U.S. 722, 740 (1991)).

To be considered an adjudication on the merits, the state court's decision may be a summary adjudication that does not include an explanation of the state court's reasoning; the habeas petitioner must still show there was no reasonable basis upon which the state court denied relief. *Harrington v. Richter,* 562 U.S. 86, 98-99 (2011). In reviewing a summary decision by a state court that appears to be a decision "on the merits", the federal court would be required to determine: First, "what arguments or theories supported or . . . could have supported . . . the state court's decision"; second, "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102; *Cook v. Kernan,* 948 F.3d 952, 966 (9th Cir. 2020).

"Clearly established federal law" consists of governing legal principles established by the United States Supreme Court at the time a state court renders its decision. *Lockyer v. Andrade,* 538 U.S. 63, 71 (2003). If there is no prior decision of the United States Supreme Court that would clearly entitle the petitioner to relief, "the state court's decision could not be 'contrary to' any holding from this [the United States Supreme] Court." *Woods v. Donald,* 575 U.S. 312, 317 (2015) (per curiam). The holding of the United States Supreme Court, not dicta, constitutes clearly established law. *White v. Woodall,* 572 U.S. 415, 419 (2014).

Each clause – "contrary to" and "unreasonable application" – contained in 28 U.S.C. § 2254(d)(1) has a separate and independent meaning. *Williams v. Taylor,* 529

REPORT AND RECOMMENDATION - 5

U.S. 362, 405 (2000). A state court ruling is contrary to clearly established federal law if the state court either arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Id.* at 412-13. A state court decision is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

To be an unreasonable application of Supreme Court precedent, the state court's decision must be objectively unreasonable. *Wilson v. Sellers,* __ U.S. __, 138 S.Ct. 1188, 1191-92 (2018); *Lockyear v. Andrade,* 538 U.S. 63, 75 (2003). The petitioner must show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error. . . beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103 (2011). This means a state court's decision must be more than "incorrect or erroneous"; if the state court simply made an error, then federal courts should refrain from re-evaluating the state court's application of federal law. *Lockyer,* 538 U.S. at 75; *Cooks v. Newland,* 395 F.3d 1077, 1080 (9th Cir. 2005).

When the federal court determines whether a state court decision was based on an unreasonable determination of the facts in light of the evidence, a federal habeas court must presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). The presumption is overcome if the petitioner presents "clear and convincing evidence" that state court findings of fact are "objectively unreasonable." *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003). The petitioner may be entitled to relief if there is an unreasonable

1  factual foundation for the state court's factual determination. 28 U.S.C. § 2254(e); *Murray v. Schriro,* 745 F.3d 984, 999 (9th Cir. 2014).

   1. Claim One: Guilty Plea

It has long been recognized that "a guilty plea is a grave and solemn act to be accepted only with care and discernment." *Brady v. United States*, 397 U.S. 742, 748 (1970). A guilty plea is only valid if it is a voluntary, knowing, intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. However, the Constitution does not require complete knowledge of all relevant circumstances. *United States v. Ruiz*, 536 U.S. 622, 630 (2002).

A guilty plea can be valid despite a defendant's misapprehension about the quality of the state's evidence, the likely penalties, the admissibility of evidence and potentially available defenses. *Id.* at 630-31 (collecting cases). A habeas corpus petitioner challenging the validity of a guilty plea bears the burden of establishing that the guilty plea was not voluntary and knowing. *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006).

A guilty plea "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Brady*, 397 U.S. at 755 (citations omitted). The Ninth Circuit has held that a direct consequence of a guilty plea is a definite, immediate and largely automatic effect on the range of the defendant's punishment. *United States v.*

1  *Adams*, 432 F.3d 1092, 1095-96 (9th Cir. 2006). This includes the range of allowable
2  punishments. *Little*, 449 F.3d at 1080. A consequence is collateral when it lies within the
3  discretion of the court imposing the consequence. *United States v. Kikuyama*, 109 F.3d
4  536, 537 (9th Cir. 1997). When the decision whether to impose a consecutive or
5  concurrent sentence is within the discretion of the court, the consequence is collateral.
6  *Id.*

7       During the petitioner's criminal trial, petitioner pled guilty to two counts of child
8  molestation in the second degree, a count of commercial sex abuse of a minor and a
9  count of communication with a minor for improper purpose. Dkt. 8-1, Ruling Denying
10 Review, at 264. In connection with his guilty plea, petitioner submitted a signed
11 Statement of Defendant on Plea of Guilty to Sex Offense. Dkt. 8-1, Statement of
12 Defendant on Plea of Guilty to Sex Offense, at 13-22. In that statement, petitioner
13 acknowledged that the sentence range for each offense was: 87-116 months with 36
14 months of community custody for counts I and IV; 108-120 months with 36 months of
15 community custody for count II and 51-60 months with 36 months of community custody
16 for count III. *Id.* at 14. Judge Arend also noted that petitioner verbally stated and
17 confirmed that he reviewed all of the evidence with his attorney and made the plea to
18 take advantage of the state's offer because he believed that he would be convicted at
19 trial. Dkt. 8-1, Statement of Defendant on Plea of Guilty to Sex Offense, at 21-22.

20      With regards to petitioner's Community Custody, pursuant to RCW
21 9.94A.589(1)(a), Judge Arend found that an exceptional sentence was warranted and
22 imposed a standard range of 36 months on each count. Dkt. 8-1, Findings of Fact and
23 Conclusions of Law for Exceptional Sentence, at 43-46. Judge Arend sentenced

24

25

1  petitioner to 36 months of Community Custody on Counts I and II to run consecutively

2  and 36 months of Community Custody on Counts III and IV to run concurrently with

3  Count I. *Id.* at 46.

4  The Court subsequently issued an Order correcting petitioner's term of

5  Community Custody because the combined incarceration and community custody terms

6  could not exceed the statutory maximum sentence for any count. Dkt. 8-1, Motion and

7  Order Correcting Judgment and Sentence, at 48-53. Accordingly, the Court amended

8  the term of Community Custody to 12 months on Counts I, II, and IV and 0 months for

9  Count III. Dkt. 8-1, Corrected Findings of Fact and Conclusions of Law for Exceptional

10 Sentence, at 55-58. The terms for Counts I and II would run consecutively for a total

11 term of 24 months with the remaining terms running concurrently. *Id.* Additionally, the

12 Court concluded "the terms of community custody in Count I, Count II and Count IV

13 shall be increased by up to an additional 24 months, and the term in Count III by up to

14 36 months, from any earned early release time the defendant accrues while

15 incarcerated, such that the maximum term of Community Custody could be 36 months

16 on each count, with a total term of 72 months." *Id.*

17 Before the Washington State Supreme Court, petitioner argued that petitioner

18 was misinformed of the sentencing consequence of his plea (as to community custody)

19 and should have been afforded an opportunity to withdraw his plea. Dkt. 8-1, Ruling

20 Denying Review, at 265. The Washington State Supreme Court held that petitioner had

21 been misinformed regarding the term of his community custody, but failed to show

22 actual and substantial prejudice stemming from the misinformation. *Id.* Accordingly, the

23 Court denied petitioner's motion for discretionary review on this ground. *Id.* at 266.

24

25

Petitioner challenges the validity of his guilty plea alleging that he was materially misinformed when he pled guilty. Dkt. 1, Petition, at 4-8. Petitioner does not allege that he was not informed of the range of allowable sentence. The record of petitioner's guilty plea indicates that he was informed of: the standard range of actual confinement for each offense; the total actual confinement for each offense considering any enhancements; the maximum terms of community custody and the maximum term; and the fine for each offense. Dkt. 8-1, Statement of Defendant on Plea of Guilty to Sex Offense, at 14. Petitioner alleges that he was not informed that the combined term of incarceration plus community custody could not exceed the statutory maximum. Dkt. 1 at 2, 4.

Based on the record before the Court, petitioner was informed of the range of allowable punishment that would result from his guilty plea. The only information that petitioner alleges he was not provided was an estimate of the actual decision that the sentencing judge would make regarding how the terms would be applied, i.e., the likely actual punishment. The likely application of a sentence, as opposed the range of potential penalties, is collateral and is not required for a valid guilty plea. *Brady v. U.S.,* 397 U.S. 742, 756 (1970) (finding that a court may accept a guilty plea despite defendant's misapprehension regarding the likely penalties).

Additionally, whether the terms of community custody would be applied consecutively or concurrently is a collateral consequence of the guilty plea because the decision is left to the discretion of the court and not an automatic consequence. RCW 9.94A.589(1)(a) (stating that sentences shall be imposed concurrently unless the court finds exceptional circumstances under RCW 9.94A.535).

Based on the foregoing discussion, the Court should find that petitioner has failed to meet his burden of establishing that his guilty plea was not a voluntary, knowing and intelligent act. Accordingly, petitioner has failed to demonstrate that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented.

2. Claim Two: Constitutional Right to Notice

As a second ground for relief, petitioner argues that he was unconstitutionally denied notice of the corrected judgment and was not allowed the right to decide whether to withdraw his guilty plea. Dkt. 1, Petition, at 8-9.[1]

Petitioner raised this argument before the Washington Supreme Court. Dkt. 8-1, Ruling Denying Review, at 266. The Court rejected this argument because petitioner's attorney received notice of the amended judgment and waived petitioner's presence. *Id.*

Petitioner argues that pursuant to *McCoy v. Louisiana* and *Brookhart v. Janis* the Court should find that petitioner's rights were violated. Dkt. 1, Petition, at 8-9 (citing *McCoy v. Louisiana*, ____ U.S. ____, 138 S. Ct. 1500 (2018), *Brookhart v. Janis*, 384 U.S. 1 (1966)). In *McCoy*, a criminal defendant accused of three homicides rejected his attorney's suggestion of conceding guilt during trial in an attempt to avoid imposition of a capital punishment. 138 S. Ct. at 1506-1507. McCoy rejected his attorney's recommendation and insisted that his attorney pursue acquittal. *Id.* During trial, the attorney, over his client's objections, conceded McCoy's guilt and urged mercy in view

---

[1] In Respondent's Answer and Memorandum of Authorities, respondent raises an argument regarding petitioner's right to be present or participate in the hearing on the corrected judgment. Dkt. 7 at 19-22. The Court need not address this issue because petitioner did not raise the issue in the petition. Dkt. 1.

REPORT AND RECOMMENDATION - 11

1   of mitigating factors. *Id*. The United States Supreme Court found that the attorney's
2   actions, and the trial court's decision to allow counsel to pursue this strategy, violated
3   the defendant's Sixth Amendment secured autonomy rights. *Id*. at 1510-11.
4         In *Brookhart*, the petitioner's counsel informed the trial court that petitioner
5   waived his right to trial by jury and wanted to be tried by the court. *Brookhart*, 384 U.S.
6   at 5. Petitioner's counsel agreed to a proceeding where the state would only need to
7   make a prima facie showing of guilt and petitioner would not offer evidence or cross-
8   examine the state's witness. *Id*. at 7. The trial court informed petitioner that agreeing to
9   this proceeding was in effect admitting guilt. *Id*. Petitioner informed the court that he did
10  not want to plead guilty. *Id*. Petitioner's counsel entered a plea that was inconsistent
11  with the petitioner's expressed desire. *Id*. The United States Supreme Court held that
12  petitioner's consent to a prima facie trial was not knowing and voluntary because an
13  attorney cannot enter a plea equivalent to a guilty plea over the petitioner's expressed
14  opposition to such a plea. *Id*.
15        Neither the Court's decision in *McCoy* nor the decision in *Brookhart* are
16  applicable to the facts in petitioner's situation. In both *McCoy* and *Brookhart*, the Court
17  reversed guilty pleas because the petitioner's attorneys entered the pleas on behalf of
18  their clients over the petitioner's objections.
19        Petitioner does not argue that his attorney entered a guilty plea on his behalf
20  over his objection -- or that petitioner was in some way coerced into pleading guilty. On
21  the contrary, petitioner's guilty plea indicates that after conferring with his attorney
22  petitioner believed that he would be convicted and decided to plead guilty in order to
23  take advantage of the prosecution's offer. Dkt. 8-1, Statement of Defendant on Plea of
24
25

Guilty to Sex Offense, at 21. Accordingly, the Court's decisions in *McCoy* and *Brookhart* do not support the petitioner's argument that his guilty plea was unconstitutionally entered.

If petitioner is contending that his guilty plea is invalidated by the fact that petitioner was not provided an opportunity to withdraw his plea before the Court corrected his sentence, this argument also fails. A valid guilty plea is not vulnerable to later attack if the defendant did not correctly assess every relevant factor in deciding to plead guilty. *Brady*, 397 U.S. at 757 ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehends the quality of the State's case or the likely penalties attached to alternative courses of action.").

Here, the trial court corrected petitioner's sentence because a miscalculation of the original sentence resulted in petitioner being subject to a sentence beyond the maximum sentence allowable under state law. The correction reduced petitioner sentence to a term within the range that petitioner was advised was possible. Accordingly, petitioner's sentence was within the range of maximum outcomes and the record shows petitioner was aware that this result was possible. The fact petitioner later wished to withdraw his plea after his actual sentence was announced by the sentencing judge, does not negate the facts in the record showing that petitioner's initial plea was a voluntary, knowing and intelligent plea.

Based on the foregoing discussion, petitioner has failed to demonstrate that the state court's decision was contrary to or involved an unreasonable application of clearly

established federal law or based on an unreasonable determination of the facts in light of the evidence presented.

### D. CERTIFICATE OF APPEALABILITY

If the Court adopts the undersigned's Report and Recommendation, it must determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The undersigned recommends that petitioner not be issued a COA. No jurist of reason could disagree with the above evaluation of his constitutional claims or conclude that the issues presented deserve encouragement to proceed further. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

### CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court dismiss the petition for writ of *habeas corpus* with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in

REPORT AND RECOMMENDATION - 14

a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

Accommodating the above time limit, the Clerk shall set this matter for consideration on **February 18, 2022**, as noted in the caption.

Dated this 31st day of January, 2022.

Theresa L. Fricke
United States Magistrate Judge